Fitzgerald, J.
 

 The Attorney General appeals by leave granted the circuit court order reversing a district court order allowing the Attorney General to unseal documents seized from Kent Community Hospital pursuant to a search warrant. The circuit court also reversed the decision of the district court by requiring the Attorney General to disclose the complete statements of certain witnesses that the Attorney General had previously disclosed only in part. We affirm.
 

 FACTS
 

 Ruth Lieberman was a long-term patient receiving nursing care at Kent Community Hospital. On July 9, 1997, Lieberman fell and injured her head while unattended. She died on July 30, 1997, apparently as a result of complications from the fall.
 
 [1]
 

 
 *383
 
 The Attorney General commenced a criminal investigation into Lieberman’s death in March 1998. An investigator from the criminal division of the Attorney General’s office spoke with employees of the hospital and obtained many documents from the hospital. More than fifteen employees were questioned or deposed by the Attorney General and the hospital turned over almost seven thousand documents.
 

 The Attorney General obtained and executed an investigatory search warrant for documents on May 28, 1998. Thousands of documents were apparently seized. Before the documents left the hospital’s premises, however, some of the documents were “sealed” because the hospital deemed them privileged “peer review” documents. While there was some informal agreement that the documents would not be revealed until the hospital’s claim of privilege was resolved, it appears that the Attorney General has reviewed the documents and resealed them and that at least one of the documents was in effect made public when the Attorney General attached it as an appendix to a reply brief filed in the district court.
 

 A hearing was held in the district court regarding the Attorney General’s motion for permission to unseal the documents seized. The district court apparently was persuaded that the privilege statute asserted by the hospital did not apply because the documents were seized pursuant to a search warrant rather than pursuant to a subpoena. The district court allowed the Attorney General to unseal the documents, but the district court stayed the decision to give the hospital an opportunity to appeal to the circuit court.
 

 
 *384
 
 On appeal, the circuit court ruled that the peer review documents were protected by the peer review privilege and that the privilege could be enforced even against documents seized pursuant to a search warrant. The court determined that our Legislature intended the privilege to apply regardless of whether the documents were seized pursuant to a subpoena or a search warrant and could see no reason for making a distinction on the basis of whether the documents were seized pursuant to a search warrant or a subpoena.
 
 [2]
 
 In addition, the circuit court ruled that the hospital was entitled to a copy of the full statements of certain witnesses where the Attorney General had relied on selected portions of those statements in support of the Attorney General’s motion.
 
 [3]
 
 Specifically, the circuit court opined:
 

 The Attorney General argues that the phrase, quote, “shall not be available for court subpoena,” close quote, protects these documents at issue in this case from disclosure only against a subpoena and not against a search warrant, but if I accept that argument, it means that the Attorney General may use a search warrant but not an investigative subpoena to obtain and review exactly the same documents described by exactly the same words. It’s simply a matter of crossing out the title “subpoena” and typing in the new title, “search warrant.” The relevancy requirements would be exactly the same. The fact that a district judge would have to approve the warrant makes no meaningful difference to me when we are talking about documents generated within the health care facility.
 

 
 *385
 
 It is, therefore, my opinion that the legislature did intend to create a class of documents which are privileged even against a criminal search warrant. This privilege may be unique in the law, but health care quality assurance is uniquely important and uniquely fragile. The free and candid exchange of facts necessary to meaningful quality assurance or peer review cannot exist... without a guarantee of confidentiality.
 

 Having said this, I must also recognize that this privilege, like all privileges, must be narrowly construed ....
 

 ... I would limit the privilege to documents which—provisionally which fit the following definitions: Number one, a document created by a peer review body or quality assurance body for peer review purposes; number two, a document created exclusively for a peer review body either at its express request or as required by law or written policy of the health care facility. A document which was created for other purposes, but which is utilized by the peer review body, does not have the advantage of this privilege. When a question arises as to whether a particular document meets these definitions, in-camera review may be necessary.
 

 As for the other issue in the case, I believe that a party has a fundamental right to see the full statement of the witness when part of that statement is used against that party in court proceedings. When the Attorney General used an excerpt from the statement of an immunized witness, she waived the confidentiality which had attached to the full statement and, therefore, I believe [Kent Community Hospital] in this case is entitled to see the full statement.
 

 I
 

 The Attorney General argues that the circuit court erred in ruling that documents privileged under MCL
 
 *386
 
 333.21515 are not subject to disclosure pursuant to a search warrant in a criminal investigation.
 
 [4]
 

 MCL 333.21515 provides:
 

 The records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena.
 

 This language is not narrowly limited to procedures attendant to discovery in civil litigation, but applies also to investigations by the Board of Medicine and the Department of Licensing and Regulation.
 
 Attorney General v Bruce,
 
 422 Mich 157, 161-169; 369 NW2d 826 (1985). The question presented in this case is whether the privilege additionally insulates peer review materials from discovery pursuant to criminal investigations.
 

 The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the Legislature.
 
 Haworth, Inc v Wickes Mfg Co,
 
 210 Mich App 222, 227; 532 NW2d 903 (1995). The language of the statute itself is the primary indicator of legislative intent.
 
 Folands Jewelry Brokers, Inc v City of Warren,
 
 210 Mich App 304, 307; 532 NW2d 920 (1995). When construing a statute, a court should presume that every word has some meaning.
 
 Tiger Stadium Fan Club, Inc v Governor,
 
 217 Mich App 439, 457; 553 NW2d 7 (1996). Statutes should be read to avoid
 
 *387
 
 absurd results.
 
 Colbert v Conybeare Law Office,
 
 239 Mich App 608, 616; 609 NW2d 208 (2000).
 

 The clear language of § 21515 provides: (1) peer review information is confidential, (2) peer review information is to be used “only for the purposes provided in this article,” (3) peer review information is not to be a public record, and (4) peer review information is not subject to subpoena. Section 21515 demonstrates that the Legislature has imposed a comprehensive ban on the disclosure of any information collected by, or records of the proceedings of, committees assigned a professional review function in hospitals and health facilities. If the specific mention of a court subpoena meant that the privilege existed only as a defense against a subpoena, the statute’s general language stating that peer review materials are confidential would become nearly meaningless. Although the statute does not refer to search warrants, it would be inconsistent with the stated purposes of the privilege to find that peer review information could be obtained pursuant to an investigatory search warrant. The protection against discovery through subpoena would effectively evaporate if an investigator needed only to obtain a search warrant instead.
 

 Underscoring the high level of confidentiality attendant to peer review documents is the statutory admonishment that such information is to be
 
 used only for the reasons set forth in the legislative article including that privilege.
 
 See article 17 of the Public Health Code, MCL 333.20101 to 333.22260. Within that article, § 21513(d), MCL 333.21513(d), which appears in the section immediately preceding § 21515, imposes on the operator of a hospital the duty to
 
 *388
 
 “assure that physicians . . . admitted to practice in the hospital are organized into a medical staff to enable an effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients.” The same subsection further states, “This review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital.” The legislation commands that a hospital maintain a peer review process for the purpose of improving patient care, and further commands that such peer review documentation be used for no purpose other than those prescribed within the article. The Attorney General does not suggest that article 17 includes any provision for use of peer review materials in furtherance of a criminal investigation. In other words, the search warrant here, while not an investigative tool specifically mentioned in the statute, nonetheless does not seek peer review information for “purposes provided in this article” and thus does not satisfy a necessary precondition for permitting disclosure. Allowing a prosecutor to obtain a hospital’s peer review materials pursuant to a search warrant would be to allow the prosecutor’s general investigative powers to override the specific privilege of confidentiality that covers such materials. See
 
 Gebhardt v O’Rourke,
 
 444 Mich 535, 542-543; 510 NW2d 900 (1994) (specific statutory provisions trump general provisions).
 
 [5]
 
 Accordingly, we conclude that docu
 
 *389
 
 merits created by a peer review body exclusively for peer review purposes are not subject to disclosure pursuant to a search warrant in a criminal investigation.
 

 n
 

 The Attorney General asserts that compelling policy considerations militate in favor of holding the statutory privilege narrowly to its terms and allowing the material here sought to be discovered pursuant to criminal investigations. A proper, objective reading of the statute, however, must be considered the Legislature’s statement of public policy. Because the Legislature protected peer review documents in broad terms, the public policy argument must be resolved in favor of confidentiality. Our Supreme Court has acknowledged that the Legislature chose to put a premium on hospitals’ maintaining effective internal review processes. See
 
 Bruce, supra
 
 at 170, n 7 and accompanying text. Peer review material is simply not available to assist in a criminal investigation; rather, it is available only for purposes indicated in article 17 of the Public Health Code. Indeed, such information would not exist in the first place but for the legislative requirement in furtherance of improving health care.* *
 
 [6]
 

 
 *390
 
 in
 

 The Attorney General argues that the circuit court erred in ordering disclosure of the complete statements, of which the Attorney General only used parts against the hospital in response to the hospital’s reply to the Attorney General’s motion to unseal the peer review documents. The hospital apparently wanted to review the entire statements to determine whether to raise an issue in the trial court regarding probable cause to issue the search warrant with regard to the peer review documents. Because we have concluded that a search warrant cannot be used to acquire the peer review documents, this evidentiary issue is moot at this time because the hospital’s challenge to the seizure of the peer review documents has been resolved in the hospital’s favor.
 

 Affirmed.
 

 [1]
 

 Lieberman’s estate is not a party to this proceeding.
 

 [2]
 

 The circuit court recognized that if there was a question regarding whether a particular document was a peer review document, then an in camera review would be in order.
 

 [3]
 

 The circuit court held that a “party has a fundamental right to see the full statement of the witness when part of that statement is used against the party in court proceedings.”
 

 [4]
 

 The Attorney General raises arguments challenging plaintiff’s status as a hospital and the status of the documents as privileged peer review materials. The Attorney General did not raise these factual arguments in the district court and, therefore, we consider these arguments forfeited.
 

 [5]
 

 The federal statutory provisions cited by the Attorney General do not spell out a duty to disclose peer review materials in criminal investigations, and do not include language suggesting that the federal provisions
 
 *389
 
 should preempt state law in this regard. Thus, the circuit court correctly held that this case should be decided purely on the basis of Michigan law.
 

 [6]
 

 The prosecutor nonetheless remains free to investigate and interview the persons who participated in the peer review process.