MANZO v PETRELLA AND PETRELLA & ASSOCIATES, PC

Docket No. 245735. Submitted April 6, 2004, at Detroit. Decided May 4, 2004, at 9:15 A.M. Leave to appeal sought.

David L. Manzo, M.D., filed a legal malpractice action against Marisa C. Petrella and Petrella & Associates, P.C., after the defendants concluded their representation of the plaintiff in his action against his former employer, the Henry Ford Health System. The defendants filed a motion for summary disposition contending that the plaintiff could not prove the proximate cause element—the case within a case—necessary to prevail. Specifically, the defendants asserted that even if the plaintiff's Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, claim in the underlying action had not been dismissed as untimely filed, it was subject to dismissal because the plaintiff did not allege that he was discharged for reporting to a public body unlawful or improper conduct committed by other doctors working for his former employer. Moreover, the defendants claimed that the former employer's Peer Standards and Conduct Committee, which the plaintiff asserted he made a report to, was not a "public body" as defined in the WPA, MCL 15.361(d). The Oakland Circuit Court, Denise Langford-Morris, J., entered an order that denied defendants' motion. The court reasoned that, but for the statute of limitations barring the plaintiff's WPA claim in the underlying action, the factual evidence was sufficient to permit that claim to survive the motion for summary disposition. The Court of Appeals denied the defendants' application for leave to appeal. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 467 Mich 930 (2002).

The Court of Appeals *held*:

The circuit court erred when it denied the defendants' motion for summary disposition. The plaintiff cannot show a viable WPA claim and so he cannot prevail on that claim. Therefore, the plaintiff cannot succeed in his legal malpractice action because he cannot prove that the defendants' failure to timely file his WPA claim proximately caused him injury.

The plaintiff is unable to prove the first element of a prima facie violation of the WPA, i.e., that he was engaged in a protected

activity as defined by the WPA. The plaintiff's claim that he reported a violation or suspected violation of law to his former employer's Peer Standards and Conduct Committee was not a protected activity because that committee was not a public body as defined by the WPA, MCL 15.361(d)(iv). MCL 15.361(d)(iv) provides that a public body is one that is created by a state or local authority. As interpreted by our Supreme Court, the Public Health Code, MCL 333.21513(d), requires hospitals, like the plaintiff's former employer, to establish peer review committees. Here, the former employer, a private entity, pursuant to its internal bylaws and procedures established the Peer Standards and Conduct Committee. That fact, in conjunction with the absence in MCL 333.21513(d) of any legislative scheme implementing reporting requirements by a peer review committee to any governmental agency, established that the Peer Standards and Conduct Committee was not created by governmental authority. Additional support for that conclusion is found in MCL 333.20175(8) and MCL 333.21515. These statutes expressly state that any information or documents collected, used, or generated by a peer review committee, like the Peer Standards and Conduct Committee, are not public documents and are not subject to court subpoena.

Finally, the protections of the WPA are not made applicable to reports made to the Peer Standards and Conduct Committee by implication from MCL 333.20180. A plain reading of that statute discloses no private right of action. Specifically, the statute repeatedly references "the department" and that term clearly means a governmental department or agency. In addition, the plaintiff does not meet the express conditions set forth in the statute for gaining any protections afforded by that statute.

Reversed and remanded.

HOSPITALS — PEER REVIEW COMMITTEES — WHISTLEBLOWERS' PROTECTION ACT — PUBLIC BODY.

A peer review committee created by a private hospital under legislative mandate, but pursuant to that hospital's internal bylaws and procedures, is not a "public body" created by state or local authority as defined in the Whistleblowers' Protection Act; an employee of that hospital is not engaged in a protected activity under the Whistleblowers' Protection Act when he reports violations or suspected violations of laws, regulations, or rules to the hospital's peer review committee (MCL 15.361[d][iv], 333.21513[d]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Donald J. Gasiorek* and *Patrick Burkett*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani, Michael P. Ashcraft, Jr.,* and *Ellen Bartman Jannette*), for the defendant.

Before: TALBOT, P.J., and NEFF and DONOFRIO, JJ.

DONOFRIO, J. Defendants appeal by leave granted an order denying their motion for summary disposition. After this Court denied defendants' initial application for leave to appeal, our Supreme Court remanded the case to this Court in lieu of reviewing this legal malpractice action. 467 Mich 930 (2002). Defendants argue that the trial court erred when it did not grant their summary disposition motion. Plaintiff is unable to meet his burden of proving causation in the legal malpractice claim because he cannot show a viable claim under the Whistleblowers' Protection Act, MCL 15.361 *et seq.* We reverse and remand.

Defendant Petrella represented plaintiff in a suit filed against his former employer, Henry Ford Health System, and numerous individuals and related entities. Plaintiff began working for Henry Ford Health System (HFHS) in 1988 and is a board-certified ophthalmologist. In 1997 friction developed between plaintiff and his division head, Dr. Bogorad. Plaintiff accused Dr. Bogorad of using his position to make sure that he saw patients with particular problems and especially those who needed surgery, apparently because surgical procedures generate more revenue than routine eye care. Plaintiff claims that this made it increasingly difficult for plaintiff and other ophthalmologists to schedule and perform surgery, which not only meant that plaintiff

was losing the opportunity to keep his surgical skills current, but also meant that his patients had less or delayed access to surgical procedures. Plaintiff, at some point, also raised concerns regarding allegedly improper billing practices by Dr. Bogorad and others whom he supervised.

According to plaintiff's former employer and the others that he sued in the original action, plaintiff was a disruptive influence in Dr. Bogorad's division, for example, plaintiff actively solicited other staff members at HFHS's West Bloomfield and Troy facilities to support his campaign against Dr. Bogorad by signing letters in support. When plaintiff accused Dr. Bogorad of being "subversive, manipulative, and derelict" in his duties, Dr. Nussbaum, chairperson of the HFHS eye care services department, requested a six-month probationary period be imposed upon plaintiff in light of his behavior and bad judgment. The vice president of medical affairs agreed with the request.

In July 1997 plaintiff retained defendants to represent him in connection with the administrative actions being taken or contemplated against him. Plaintiff appealed to the HFHS Professional Standards and Conduct Committee (PSCC). Following a hearing held in December 1997, plaintiff and his attorney received a letter placing him on decision-making leave for one week. Plaintiff was expected to resign or face further action. When plaintiff refused to resign, his employment and staff membership with the hospital were terminated by letter to counsel dated February 10, 1998. Further administrative appeals upheld the termination.

Later that year, on September 9, 1998, defendant Marisa C. Petrella filed a complaint on plaintiff's behalf in the circuit court alleging breach of contract, promis-

sory estoppel, defamation, violation of the Whistleblowers' Protection Act (WPA), MCL 15.361, *et seq.*, retaliatory or constructive discharge, religious or ethnic origin discrimination, tortious interference with advantageous business relationship, and misappropriation of name. HFHS moved for summary disposition on all counts. In connection with the WPA claim, HFHS argued that it was untimely because it was filed more than ninety days after plaintiff's discharge. HFHS also argued in the alternative that plaintiff could not establish a prima facie whistleblower violation case. After a hearing, the trial court granted summary disposition on most of the counts of the complaint. In connection with the whistleblower's action, the court agreed that it was untimely, and that plaintiff's attempt to state a separate cause of action under the Public Health Code, MCL 333.20180, was likewise time-barred. The trial court stated:

> While arguably, plaintiff, would have the protection of the whistleblower's protection act, plaintiff is still bound by the statute of limitations for such claims, and there is no dispute that the complaint was filed in excess of 90 days after the termination.
>
> Plaintiff's argument that the statute must be told [sic], is without authority, and otherwise unpersuasive. The motion is granted as to count 4.
>
> With regard to count 5, which alleges retaliation. The Public Health Code provides no separate right of action other than the referenced application to the whistleblower's protection act. As such, this count is also dismissed as to the whistleblower's claim is time-barred.

According to defendants, an order was entered on May 31, 2000. The order was not appealed, and the case was eventually resolved after all parties accepted the results of case evaluation.

Plaintiff filed the instant action on September 13, 2000, alleging legal malpractice. Defendants moved for summary disposition, arguing that plaintiff cannot establish the proximate cause element of his cause of action, i.e., cannot prove the "case within a case," necessary to prevail in a legal malpractice action. Defendants argued that plaintiff's WPA claim should have been dismissed even if it was not untimely because the hospital's PSCC was not a "public body" within the meaning of the Whistleblowers' Protection Act, MCL 15.361(d), and because plaintiff had not even alleged that he was discharged for having reported, or for being about to report, a violation or suspected violation of a law or regulation or rule to a public body. Plaintiff responded that the PSCC was a "public body" for purposes of the WPA, and even if it was not, MCL 333.20180 of the Public Health Code in effect made the PSCC a public body for purposes of the WPA.

After hearing argument, the court noted the elements of causes of action for legal malpractice and violation of the WPA, and then denied defendants' motion for the following reasons:

> The court finds that plaintiff has established a prima facie case of legal malpractice. Plaintiff has presented sufficient evidence that there was a factual basis for the Whistleblower's Act claim, and that but for the statute of limitations problem, his cause of action would have survived the motion for summary disposition. Therefore, defendants' motion for summary disposition is not appropriate.

An order was entered denying defendants' motion for the reasons stated by the court on the record. Defendants applied for leave to appeal, arguing that the trial court erred in denying their motion for summary disposition. This Court denied defendants' motion. Defen-

dants appealed to our Supreme Court which, in lieu of granting leave, remanded the case for our consideration.

This Court reviews de novo the trial court's decision concerning a motion for summary disposition. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). If genuine issues of material fact do not exist and the moving party is entitled to judgment as a matter of law, summary disposition pursuant to MCR 2.116(C)(10) is appropriate. *West, supra* at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*, citing *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997); *Quinto v Cross & Peters Co*, 451 Mich 358, 369; 547 NW2d 314 (1996). Whether a plaintiff has established a prima facie case under the WPA is a question of law subject to review de novo. *Phinney v Perlmutter*, 222 Mich App 513, 553; 564 NW2d 532 (1997). We also review de novo questions of statutory interpretation. *Frank W Lynch Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). "A bedrock principle of statutory construction is that 'a clear and unambiguous statute leaves no room for judicial construction or interpretation.' . . . When the statutory language is unambiguous, the proper role of the judiciary is to simply apply the terms of the statute to the facts of a particular case." *Rakestraw v Gen Dynamics Land Systems, Inc*, 469 Mich 220, 224; 666 NW2d 199 (2003) (citations omitted).

Defendants argue on appeal that the trial court clearly erred when it denied their motion for summary disposition because plaintiff was unable to meet his burden of proving causation in this legal malpractice

action. The elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged. *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994). For purposes of this appeal, we are only concerned with causation. In order to establish proximate cause, a plaintiff must show that a defendant's action was a cause in fact of the claimed injury. Hence, a plaintiff must show that, but for an attorney's alleged malpractice, the plaintiff would have been successful in the underlying suit. This is the "suit within a suit" requirement in legal malpractice cases. *Id.* at 586-587. Specifically, defendants argue that plaintiff could not show a viable WPA claim and that, because he could not prevail on the WPA claim, plaintiff could not succeed in his legal malpractice action.

To establish a prima facie violation of the WPA, a plaintiff must show that (1) the plaintiff was engaged in a protected activity as defined by the WPA, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge. *Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998); *Shallal, supra* at 610. The instant case only involves the first element. Plaintiff claims he was discharged in violation of the WPA because he reported a violation or a suspected violation of the law or regulation or rule to a public body. Defendants contend that the hospital's PSCC is not a public body within the meaning of the WPA. Thus, the key question before us is whether the PSCC is a public body within the meaning of the WPA. A protected activity under the act consists of "(1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3)

being asked by a public body to participate in an investigation." *Chandler, supra* at 399 citing the WPA, MCL 15.362; *Roulston v Tendercare (Michigan), Inc*, 239 Mich App 270, 279; 608 NW2d 525 (2000).

The PSCC is what is commonly referred to as a peer review committee responsible for the retrospective review of patient care. Defendants argue that the hospital is a private entity, not a public or governmental hospital, and that the PSCC is a private administrative entity and not a "public body" for purposes of the WPA. Plaintiff argues to the contrary that the PSCC is a public body pursuant to the operation of MCL 333.21513 and MCL 15.361(d)(iv).

Under the Public Health Code, MCL 333.21513(d), hospitals

> [s]hall assure that physicians and dentists admitted to practice in the hospital are organized into a medical staff to enable an effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients. The review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital.

Our Supreme Court has interpreted this provision to mean that "[h]ospitals are required to establish peer review committees whose purposes are to reduce morbidity and mortality and to ensure quality care." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 41; 594 NW2d 455 (1999). Further, MCL 15.361(d)(iv) provides that "public body" means:

> Any other *body which is created by state or local authority* or which is primarily funded by or through state or local authority, or any member or employee of that body. [Emphasis added.]

We are not persuaded by plaintiff's interpretation of the application of the foregoing statutes that the PSCC was created through state or local authority. HFHS is a private hospital. Michigan requires all hospitals, even private entities like HFHS to establish peer review committees. Through its compliance with a legislative mandate to monitor and review their own professional practices, HFHS, a private body, created the PSCC by virtue of its own internal bylaws and procedures. MCL 333.21513(d) provides that these committees are for the purpose of improving patient care. The statute does not provide a legislative scheme or any guidelines whatsoever governing implementation, action, or reporting requirements to any governmental agency. Considering the lack of direction, we find that MCL 333.21513(d) does not implicate governmental authority.

We also find significant two additional sections in the Public Health Code, MCL 333.20175 and MCL 333.21515. Both statutes "govern the confidentiality of records, reports, and other information collected or used by peer review committees in the furtherance of their duties and evidence the Legislature's intent to *fully* protect quality assurance/peer review records from discovery." *Ligouri v Wyandotte Hosp*, 253 Mich App 372, 376; 655 NW2d 592 (2002), citing *Dorris, supra* at 40 (emphasis in original). MCL 333.20175(8) states:

> The records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency . . . are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena.

And, MCL 333.21515 reads:

> The records, data, and knowledge collected for or by individuals or committees assigned a review function de-

scribed in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena.

The plain language of each statute illustrates that the records, reports, and other related documents collected, used, or generated by a hospital's PSCC are privileged from disclosure. The discoverability of these documents is not contingent upon the type of claim asserted by a subpoena proponent. *Ligouri, supra* at 377. These documents are not subject to disclosure in a criminal investigation pursuant to a search warrant, *In re Investigation of Lieberman*, 250 Mich App 381; 646 NW2d 199 (2002), a civil suit concerning an assault on a hospital patient, *Dorris, supra*, a medical malpractice claim, *Gallagher v Detroit-Macomb Hosp Ass'n*, 171 Mich App 761, 431 NW2d 90 (1988), or an investigation by the Board of Medicine, *Attorney General v Bruce*, 422 Mich 157; 369 NW2d 826 (1985). Any data amassed, assembled, or produced by a PSCC is statutorily protected from discovery. This statutory protection affords the PSCC the privilege to keep information confidential or "private" and further buttresses our finding that the PSCC is not a public entity.

For these reasons, we find that the PSCC is not a public body that was created "by state or local authority" pursuant to MCL 15.361(d)(iv). Because the PSCC was "created" by HFHS, and not by any state or local authority, the PSCC is not a "public body" for purposes of the WPA. Therefore, plaintiff lacked a viable WPA claim and is unable to meet his burden of proving the suit within a suit for the legal malpractice claim.

Plaintiff claims in the alternative that he has a viable claim under MCL 333.20180 of the Public Health Code. Plaintiff submits that even if a peer review committee is

not a "public body" as defined in the WPA, that the protections of the WPA are made applicable to reports made to peer review committees like the PSCC under § 20180. Plaintiff claims that MCL 333.20180 provides a cause of action, with all remedies available to whistle-blowers under the WPA, in favor of those individuals who make internal complaints. MCL 333.20180 provides:

> (1) A person employed by or under contract to a health facility or agency or any other person acting in good faith who makes a report or complaint including, but not limited to, a report or complaint of a violation of this article or a rule promulgated under this article; who assists in origi-nating, investigating, or preparing a report or complaint; or who assists the department in carrying out its duties under this article is immune from civil or criminal liability that might otherwise be incurred and is protected under the whistleblowers' protection act, 1980 PA 469, MCL 15.361 to 15.369. A person described in this subsection who makes or assists in making a report or complaint, or who assists the department as described in this subsection, is presumed to have acted in good faith. The immunity from civil or criminal liability granted under this subsection extends only to acts done pursuant to this article.

> (2) Unless a person described in subsection (1) other-wise agrees in writing, the department shall keep the person's identity confidential until disciplinary proceed-ings under this article are initiated against the subject of the report or complaint and the person making or assisting in originating, investigating, or preparing the report or complaint is required to testify in the disciplinary proceed-ings. If disclosure of the person's identity is considered by the department to be essential to the disciplinary proceed-ings and if the person is the complainant, the department shall give the person an opportunity to withdraw the complaint before disclosure.

> (3) Subject to subsection (4), a person employed by or under contract to a hospital is immune from civil or criminal liability that might otherwise be incurred and shall not be discharged, threatened, or otherwise discrimi-

nated against by the hospital regarding that person's compensation or the terms, conditions, location, or privileges of that person's employment if that person reports to the department, verbally or in writing, an issue related to the hospital that is an unsafe practice or condition that is not a violation of this article or a rule promulgated under this article. The protections afforded under this subsection do not limit, restrict, or diminish, in any way, the protections afforded under the whistleblowers' protection act, 1980 PA 469, MCL 15.361 to 15.369.

(4) Except as otherwise provided in subsection (5), a person employed by or under contract to a hospital is eligible for the immunity and protection provided under subsection (3) only if the person meets all of the following conditions before reporting to the department the issue related to the hospital that is an unsafe practice or condition that is not a violation of this article or a rule promulgated under this article:

(a) The person gave the hospital 60 days' written notice of the issue related to the hospital that is an unsafe practice or condition that is not a violation of this article or a rule promulgated under this article. A person who provides a hospital written notice as provided under this subdivision shall not be discharged, threatened, or otherwise discriminated against by the hospital regarding that person's compensation or the terms, conditions, location, or privileges of that person's employment. Within 60 days after receiving a written notice of an issue related to the hospital that is an unsafe practice or condition, the hospital shall provide a written response to the person who provided that written notice.

(b) The person had no reasonable expectation that the hospital had taken or would take timely action to address the issue related to the hospital that is an unsafe practice or condition that is not a violation of this article or a rule promulgated under this article.

(5) Subsection (4) does not apply if the person employed by or under contract to a hospital is required by law to report the issue related to the hospital that is an unsafe practice or condition that is not a violation of this article or

a rule promulgated under this article before the expiration of the 60 days' notice required under subsection (4).

(6) A hospital shall post notices and use other appropriate means to keep a person employed by or under contract to the hospital informed of their protections and obligations under this section. The notices shall be in a form approved by the department. The notice shall be made available on the department's internet website and shall be posted in 1 or more conspicuous places where notices to persons employed by or under contract to a hospital are customarily posted.

(7) As used in this section, "hospital" means a hospital licensed under article 17.

Contrary to plaintiff's argument, a plain reading of MCL 333.20180 demonstrates that no private right of action exists under the section. There are repeated references[1] in the text to assisting "the department," which clearly reference a public entity, a governmental department or agency. Further, and significantly, the statute even sets out conditions that must be met before making a report to the governmental department. After reviewing the language of the statute, and the framework set out within the statute, it is clear that the statute does not create a private right of action.

For these reasons, plaintiff's cause of action fails. Plaintiff cannot show a viable WPA claim, and so he cannot sustain his burden of proving causation in the legal malpractice claim. Therefore, the trial court's denial of defendant's summary disposition motion was error.

Reversed and remanded. We do not retain jurisdiction.

---

[1] See particularly MCL 333.20180(1), (2), (3), (4), and (6).