*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID TAYLOR,

        Plaintiff-Appellant,

v

DAVID KALLMAN and KALLMAN LEGAL GROUP PLLC,

        Defendants-Appellees.

UNPUBLISHED
June 13, 2019

No. 344163
Eaton Circuit Court
LC No. 2017-000272-NM

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

In this legal malpractice suit, plaintiff, David Taylor, appeals by right the trial court order granting defendants David Kallman and Kallman Legal Group PLLC summary disposition under MCR 2.116(C)(10). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

This legal malpractice case arises out of Kallman's representation of Taylor in two interrelated matters involving an apartment complex in Lansing, Michigan. Under the terms of a loan agreement with First Merit Bank, N.A., Taylor was required to provide First Merit Bank with an annual certificate of compliance; the failure to do so constituted a default under the agreement that would allow First Merit Bank to accelerate the entire balance of the loan.[1] In July 2013, the City of Lansing—the entity responsible for issuing the certificate of compliance—

---

[1] A copy of the loan agreement is not included in the lower court record. However, its terms are referenced in an opinion entered by the United States District Court for the Western District of Michigan, and the parties do not contend that the terms recited therein are inaccurate or misstated.

conducted an inspection of the apartment complex, found multiple violations, and deemed the property substandard. The City directed Taylor to correct the violations by August 2013.[2]

Taylor acknowledged that the City "red-tagged" a couple of units. He stated that "the necessary repairs were completed on the units," but that the City refused to re-inspect the units so that the red-tags could be removed. In his affidavit, Taylor acknowledged that the City sent inspectors to the property, but he asserted that they "would inspect other units and come up with more repairs they wanted completed but would not inspect the red tagged units that had already had the repairs completed." Inspection notices from the City, however, show that the apartment complex was re-inspected in April 2014, and that there were still violations in multiple units, including units that were deemed to have violations during the July 2013 inspection. In addition, in July 2014, the Ingham County Health Department sent an abatement of infestation letter to Taylor indicating that, due to numerous complaints from residents, the Health Department had investigated and determined that there were bed bug and cockroach infestations in multiple units of the apartment complex.

Taylor averred that he hired Kallman and Kallman Legal Group to assist him in getting the units re-inspected. He did not state when he hired Kallman and Kallman Legal Group. Instead, he only noted that before retaining Kallman, Kallman told him the City could not do what they were doing and that he would be able to get the inspections done, but after being retained Kallman's position was that "there was nothing that could be done" about the City's refusal to re-inspect the red-tagged units. Taylor stated in his affidavit that "after months and months" of Kallman "doing nothing," Taylor hired a second lawyer, Ina O'Briant, "to try to get the inspections done, which she was able to do." In an affidavit, O'Briant averred that she personally completed an inspection of the premises and "confirmed that any and all repairs that had been required were completed." Thereafter, on March 23, 2015, O'Briant scheduled an inspection of the red-tagged units for April 1, 2015; however, she stated that the inspection was cancelled because a court-appointed receiver began to manage the property.

Because the City did not issue a certificate of compliance for the apartment complex, Taylor defaulted on the loan agreement with First Merit Bank. On January 27, 2014, First Merit Bank sent Taylor notice that he was in default because of his failure to provide the annual certificate of compliance, and the bank gave him until February 14, 2014 to cure the default. Taylor admitted that default was never cured. Accordingly, in April 2014, First Merit Bank filed a lawsuit against Taylor in federal district court.

In May 2014, Taylor hired Kallman to represent him in the First Merit Bank litigation. On May 29, 2014, Kallman filed an answer to First Merit Bank's complaint. On June 25, 2014, First Merit Bank filed a motion for summary judgment. Kallman filed a response to the motion

---

[2] By way of non-exhaustive example, the inspector discovered the following violations: inoperable fire door, broken windows, a rusted furnace, accumulation of stagnant water due to improper grading or drainage, damaged walls in hallways, loose or inoperable light fixtures, leaky faucets, missing or inoperable smoke detectors in hallways and bedrooms, and bed bug and cockroach infestations.

on July 23, 2014. A hearing on the motion was set for October 15, 2014, but the case was stayed and administratively closed after Taylor filed for bankruptcy. After Taylor failed to complete the bankruptcy proceedings, the federal court reopened the case on a motion from First Merit Bank. The summary judgment motion was noticed for hearing on January 8, 2015. One day before the hearing, on January 7, 2015, Taylor filed for bankruptcy a second time and the case was again stayed and administratively closed. Taylor did not complete the second bankruptcy, so the federal court again reopened the matter on a motion from First Merit Bank.[3] The summary judgment motion was noticed for hearing on March 24, 2015. In addition, on March 6, 2015, First Merit Bank filed a motion for the appointment of a receiver. The hearing on that motion was also set for March 24, 2015.

On March 12, 2015, Kallman spoke with Taylor on the phone; Kallman's notes on the call indicate that Taylor's bankruptcy lawyer was going to extend the bankruptcy and get the order to Kallman. It also stated that Taylor's bankruptcy lawyer was "preparing action v. City also." In addition, on March 24, 2015, Kallman again spoke with Taylor on the phone; in his case notes, Kallman wrote that Taylor knew a receiver would be appointed and that Taylor "told me not to go—order will be entered." In his affidavit, Taylor confirmed that he spoke with Kallman and agreed that Kallman did not have to appear for the hearing, but he stated that it was Kallman that convinced him that Kallman need not appear, and he stated that he was relying on Kallman's expertise. Kallman did not appear at the hearing.

The court granted summary judgment in favor of First Merit Bank, ruling that the parties entered into a binding agreement, the agreement required an annual certificate of compliance, Taylor failed to provide the certificate, and First Merit Bank suffered damages when Taylor failed to pay the accelerated balance based on Taylor's default. The federal opinion noted that Taylor's defense to compliance was that "the City of Lansing has refused to inspect the premises and provide him the necessary certificate." The court rejected the defense, noting that Taylor did not provide legal authority in support of his position and reasoning that the contract did not excuse compliance based on the inactions of a third party. Accordingly, the federal court granted the motion for summary judgment, and, on April 2, 2014, the court entered a monetary judgment against Taylor.

In addition, the federal court entered an order appointing a receiver for the property. The order noted that Taylor's lawyer had failed to appear on the motion. Taylor did not appeal the orders granting summary judgment and appointing a receiver; he stated in his affidavit that Kallman never told him that he could appeal the order granting "summary disposition" but that if he had known he could he would have done so. He made no similar statements with regard to whether he would have appealed the order appointing a receiver.

On May 28, 2015, First Merit Bank and the court-appointed receiver filed a joint motion for an order of sale. Kallman did not respond to the motion on Taylor's behalf. However, Taylor stated in his affidavit that he contacted Kallman for legal assistance after the motion for sale of the property had been filed. Subsequently, on July 17, 2015, Kallman filed an emergency

---

[3] Taylor was represented in the bankruptcy proceedings by a third lawyer, Sean Campbell.

motion to stay the closing and an objection to the sale price. In the motion, Kallman noted that Taylor intended to appeal the June 22, 2015 order approving the sale of the property. Kallman also stated that Taylor objected to the sale price for the property because Taylor had received an offer to purchase the property for $900,000 on August 13, 2014. Additionally, Kallman noted that Taylor believed the "management company" had suppressed the value of the properties by reducing the occupancy rate from 90% to 15%, and Taylor believed First Merit Bank "cooperated with the City of Lansing to delay the lifting of red tags from six (6) units thereby harming the value of the properties." The federal court denied the motion, stating that it appeared to be "yet another strategic maneuver to further delay the inevitable sale of the property," and noting that the objection to the purchase price was without merit as it was "based on nothing more than an offer received over a year ago, when the building was in a better maintained state."

Thereafter, proceeding pro se, Taylor appealed the federal court's order approving the sale of the property. The court affirmed the lower court order, noting that Taylor did not timely object to the motion for approval of the sale, that there was no evidence supporting his contention that the property deteriorated in value under the receiver's management, and that there was no evidence that the requirements in the August 2014 purchase agreement were satisfied. The court did not address Taylor's contention that the receiver violated state law by not obtaining two independent appraisals because that issue was not raised before the lower court. Additionally, the court noted that Taylor's claim that he was denied due process based on Kallman's legal representation was not viable because there is no constitutional right to counsel in a civil case.

On March 3, 2017, Taylor filed a legal malpractice claim against Kallman and Kallman Legal Group. Taylor alleged that in May 2014 he hired Kallman and Kallman Legal Group to represent him in the First Merit Bank litigation, and he alleged that he "repeatedly asked" Kallman to assist him with getting the red-tagged units re-inspected. Kallman, representing himself and his law firm, filed an answer generally denying the allegations. He moved for summary disposition, which, after oral argument, the trial court granted.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Taylor argues that the trial court erred by granting summary disposition under MCR 2.116(C)(10). We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A party moving for summary disposition under MCR 2.116(C)(10) must support the motion with enough detail that the opposing party is on notice of the need to respond. *Id*.; see also MCR 2.116(G)(4) (stating that the moving party must "specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact"). The motion must be supported "with affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted." *Barnard Mfg*, 285 Mich App at 369; MCR 2.116(G)(3)(b). A properly supported motion for summary disposition shifts the burden to the opposing party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In doing so, the nonmoving party cannot rely on

mere allegations or denials, but must instead, "by affidavits or as otherwise provided in [MCR 2.116], set forth specific facts showing that there is a genuine issue for trial." *Barnard Mfg*, 285 Mich App at 374 (quotation marks and citations omitted).

A motion for summary disposition under MCR 2.116(C)(10) challenges the "factual adequacy of a complaint on the basis of the entire record, including affidavits, depositions, admissions, or other documentary evidence." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). It is properly granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact . . . ." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Gorman*, 302 Mich App at 116 (quotation marks and citation omitted).

## B. ANALYSIS

"It is well established that an attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client." *Simko v Blake*, 448 Mich 648, 656; 532 NW2d 842 (1995) (quotation marks, alteration, and citations omitted). In order to successfully advance a legal malpractice claim, the plaintiff must show "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004), citing *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994) (opinion by RILEY, J). In *Manzo*, this Court explained:

> In order to establish proximate cause, a plaintiff must show that a defendant's action was a cause in fact of the claimed injury. Hence, a plaintiff must show that, but for an attorney's alleged malpractice, the plaintiff would have been successful in the underlying suit. This is the 'suit within a suit' requirement in legal malpractice cases. [*Manzo*, 261 Mich App at 712.]

We first address whether there was a genuine issue of material fact with regard to Taylor's malpractice claim to the extent that it was premised on the litigation with First Merit Bank. Taylor contends that Kallman's representation was negligent because (1) he failed to attend the March 24, 2015 hearing on First Merit Bank's motion for summary judgment, (2) he failed to respond to the motion to appoint a receiver, (3) he failed to notify Taylor that he had a right to appeal the order granting summary judgment, and (4) he failed to respond to the motion to order the sale of the property. We conclude that, in each instance, Taylor failed to establish the third element of his legal malpractice claim, i.e., that Kallman's alleged negligence was the proximate cause of his injury.[4]

---

[4] Taylor asserts that the trial court erred by determining that Kallman was not Taylor's lawyer at the time of the default. There is a question of fact with regard to when Taylor first retained Kallman to provide legal representation. However, with regard to the First Merit Bank litigation,

The underlying litigation with First Merit Bank involved a breach of contract. The parties do not dispute that, under the terms of the loan agreement, Taylor agreed to provide First Merit Bank with an annual certificate of compliance. Additionally, the parties do not dispute that Taylor failed to do so, that his failure was a default, that First Merit Bank was entitled to accelerate the balance of the loan, that the loan balance was accelerated, and that Taylor failed to pay the accelerated balance. In other words, the parties agree that Taylor failed to comply with the terms of the loan agreement. Nevertheless, on appeal, Taylor asserts that his compliance with the loan agreement was excused because the City of Lansing refused to re-inspect red-tagged units, which rendered his performance under the contract impossible.[5] Specifically, he asserts that Kallman was negligent by failing to appear at a March 24, 2015 hearing on First Merit Bank's motion for summary judgment.

The rule of impossibility provides that "when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated." *Bissell v L W Edison Co*, 9 Mich App 276, 284, 156 N.W.2d 623, 626 (1967) (quotation marks and citation omitted). Impossibility encompasses impracticability. *Id*. at 285. "Although absolute impossibility is not required, there must be a showing of impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." *Roberts v Farmers Ins Exch*, 275 Mich App 58, 74; 737 NW2d 332 (2007) (quotation marks and citation omitted)). "The impracticability defense applies only if an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract." *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F 3d 692, 702 (CA 6, 2017) (quotation marks omitted). "In other words, the defense is viable only if an unforeseen event occurs and the non-occurrence of that event was a basic assumption on which both parties made the contract." *Id*. (quotation marks, alterations, and citation omitted).

Taylor argues that impossibility was a viable defense because the repairs were completed, but the City of Lansing refused to re-inspect the red-tagged units after being notified that the

---

Taylor and Kallman agree that Kallman was hired in May 2014. No time frame is provided for when Kallman was retained to assist Taylor in getting the City of Lansing to re-inspect the red-tagged units. As a result, there is nothing in the record to support a finding that *before* Taylor defaulted on the loan agreement in January 2014, he had retained Kallman's services to get the red-tags removed from the property. Regardless, even if the court erred by finding that Kallman did not have an attorney-client relationship with Taylor at the time of the default, any such error is not outcome determinative because that Taylor failed to establish all the elements of his legal malpractice claim.

[5] Kallman asserted that his attendance at the hearing was excused by Taylor, and he presented evidence in support of that claim. In response, Taylor asserted that he only agreed that Kallman did not have to attend because he was relying on Kallman's advice. Regardless of why Kallman did not attend the hearing, Taylor cannot prove that his absence was the proximate cause of his claimed injury. Accordingly, although this portion of the case is factually disputed, it is not a material fact, so it does not mandate the denial of summary disposition. See MCR 2.116(C)(10).

repairs were completed. On appeal, he stated that "[i]f all repairs were completed and the units were ready for Inspection, [Taylor] had done all that he could do" and the City's refusal to re-inspect was outside of his control. Yet, there is nothing in the record showing when Taylor notified the City that the repairs were completed. If such notice occurred after the default, an impossibility defense would not have been applicable because the judgment was not entered solely because Taylor failed to provide First Merit Bank with a certificate of compliance. It was entered because, after defaulting on the terms of the loan agreement, the balance was accelerated and he failed to pay the accelerated balance. Moreover, although Taylor contends that the City's refusal to re-inspect was "beyond his control," the record belies his claim. O'Briant averred that she was able to successfully contact the City on March 23, 2015—before summary judgment was granted in the federal case—and schedule the re-inspection of the red-tagged units. Her ability to do so demonstrates that compliance with the requirement in the loan agreement was not impossible at the time that summary judgment was granted. In addition, we note that there is nothing in the record suggesting that Taylor was prohibited from taking legal action against the City based on the City's alleged blatant and unjustified refusal to re-inspect red-tagged units. Therefore, although Taylor asserts that the situation was "out of his control" he does not support that assertion with evidence as required by MCR 2.116(G)(4). See *Barnard*, 285 Mich App at 374 (noting that a party opposing summary disposition must rely on evidence, not mere allegations or denials, in order to avoid summary disposition).[6]

Taylor next contends that at the March 24, 2015 hearing, Kallman should have opposed the motion for the appointment of a receiver and could have prevented Taylor's assets from being frozen. He is unable to prove the "suit within a suit" requirement, however.[7] Although

---

[6] In addition, we note that as a general rule the doctrine of impossibility "will not serve to discharge a party who has assumed the risk that a given event will be rendered impossible." *Frank's Nursery Sales, Inc v American Nat'l Ins Co*, 388 F Supp 76, 82 (1974). Taylor argues that he did not assume the risk that compliance with the loan agreement would become impossible. However, he provides no evidence to support that assertion. A copy of the loan agreement is not included in the lower court record, but the federal court determined that nothing in the agreement contemplated excusing compliance based on the inactions of a third party. To show that he did not assume the risk, Taylor points out that he owned and rented property in the City of Lansing for 40 years, and, during that period, he received certificates of compliance and had no issues with the City. It is axiomatic, however, that just because a municipality issues a certificate of compliance for one year does not mandate that the City also issue such certificates in future years. Rather, an *annual* certificate clearly contemplates the need for *annual* compliance. And there is nothing in the record to show that Taylor was unaware that he could fail to acquire a certificate of compliance in the event that his property was in a substandard condition. Further, although Taylor avers that the City refused to re-inspect the red-tagged units, he also stated that when the City did come to re-inspect the property, it found violations in other units, which allows for an inference that notwithstanding the City's refusal to re-inspect the red-tagged units, there remained problems with the condition of the property.

[7] Taylor asserts that there is no "suit within a suit" requirement here because he could have sold the property at any time for $900,000. As explained later in this opinion, there is only evidence,

-7-

Taylor directed the trial court to the portion of the mortgage agreement providing for the appointment of a receiver, it is not clear that First Merit Bank was using the mortgage agreement as the basis for its request for the appointment of a receiver. Indeed, a copy of First Merit Bank's motion for the appointment of a receiver is not included in the lower court record. Therefore, on this record it is not possible to determine the legal basis upon which the federal court relied when it granted the motion. Because the motion to appoint a receiver could have been granted for any number of valid reasons, Taylor is unable to meet his burden of establishing a question of fact on the proximate causation requirement of this aspect of his legal malpractice claim.

Similarly, although Taylor provides evidence in support of his claim that Kallman did not notify him that he had a right to appeal the summary judgment order and that, had he known that fact, he would have filed an appeal, he does not provide any evidence showing that but for Kallman's negligence, he would have been successful in appealing the decision. Accordingly, Kallman's failure to notify Taylor that he could appeal the federal court opinion granting summary judgment is not a viable basis for a legal malpractice claim because Taylor cannot establish causation.

Next, like the motion to appoint a receiver, a copy of the motion to order sale of the property is not included in the lower court record. As a result, we have no ability to discern the legal basis for First Merit Bank's request. And, because the legal basis for the motion is not apparent, we cannot ascertain whether Kallman could have raised a successful objection to the motion. Consequently, summary disposition of this aspect of the legal malpractice claim was not inappropriately granted by the trial court.

Finally, we address whether there was a genuine issue of material fact with regard to Taylor's malpractice claim to the extent that it was premised on Kallman's failure to get the City of Lansing to re-inspect the red-tagged units. Taylor argues that there is a question of fact with regard to whether, but for Kallman's failure to get the City to re-inspect the property, he would not have been injured. But Taylor relies on a tenuous chain of inferences. First, he directs this Court to evidence showing that Kallman was unsuccessful in getting the City to re-inspect the units. He also notes that the repairs to the units had been completed; a fact that O'Briant attests to in her affidavit. Taylor alleges that, had the City re-inspected the red-tagged units, the red-tags would have been removed and he could have sold the property for $900,000. We disagree.

First, Taylor has not directed this Court to evidence establishing that Kallman breached the standard of care in connection with his representation of Taylor. He contends that before hiring Kallman, Kallman stated that he could get the inspections done, but once he was hired he stated that there was nothing he could do. Kallman's belief that he could obtain a favorable result does not mean that he breached the standard of care simply because he was unable to

---

however, that in August 2014 he could have sold the property for $900,000, provided that the terms and conditions in the purchase agreement were satisfied, but there is no evidence that the offer to purchase for $900,000 was still viable in March 2015, when summary judgment was granted by the federal court.

obtain a favorable result. A lawyer "does not have a duty to insure or guarantee the most favorable outcome possible." *Simko*, 448 Mich at 656. Thus, without more, the mere failure to get a third party to take an action does not show a breach of the standard of care. There is nothing on the record indicating that Kallman took *no* action to compel the City to re-inspect the unit. Taylor only asserts that Kallman was unsuccessful, but that bare contention, without more, does not allow this Court to even assess whether Kallman's actions or inactions were, in fact, negligent. As a result, the trial court did not err by granting Kallman summary disposition on this aspect of Taylor's legal malpractice claim.

Moreover, even if some action or inaction of Kallman's could be considered negligent with respect to getting the City to re-inspect the property, Taylor cannot establish causation. Although Taylor and O'Briant aver that the repairs were completed on the red-tagged units, there is nothing in the record suggesting that additional repairs on those units, or other units, would not have been required. Instead, there is evidence that the occupancy rate deteriorated from 90% to 15%, it is reasonable to infer that problems with the apartment complex persisted.

Further, even if the City had removed the red-tags on the units that it had previously tagged, there is nothing in the record supporting an inference that the sale of the property for $900,000 would have, in fact, taken place. Taylor directs this Court to an August 2014 purchase agreement, which indicated that Reinhold Investment Holdings, LLC would purchase the property for $900,000. The agreement provided:

> Purchaser shall be under no obligation to purchase the Property or otherwise perform under this Agreement unless Purchaser determines the Property to be, in all respects, suitable for its intended purposes. The decision as to whether the Property is suitable for its intended purposes shall be the sole decision of the Purchaser, determined in the absolute discretion of Purchaser, with Purchaser's decision being final and binding upon both parties. Purchaser shall have either Thirty (30) days from the Effective Date or Fifteen (15) days from receipt of Seller's documentation (see other provision) whichever is longer to notify Seller of its termination of this Agreement due to Purchaser's determination that the Property is unsuitable for its intended purpose (the "Inspection Period"). . . . .

It also stated that the purchaser was under "no obligation to purchase the Property from Seller unless the Title Company shall deliver to Purchaser at Closing" a title insurance policy. Finally, the agreement contained a time-is-of-the-essence clause that stated, "[i]f not accepted by August 20, 2014 at 5:00 pm, this offer may be withdrawn at the purchaser's sole discretion." The agreement was not accepted by August 20, 2014; only the purchaser's representative signed the agreement.

In the proceedings before the trial court, the potential purchaser did not provide a direct statement indicating that it remained willing to purchase the property in March 2015, when summary judgment was granted in favor of First Merit Bank. Instead, the only statement regarding the purchaser's intention with respect to the property was made indirectly by O'Briant, who averred that she was retained by Taylor "to assist him with obtaining an Inspection of 'red tagged' units by the City of Lansing Office of Building and Zoning-Code Compliance as his

current attorney, David Kallman, was not assisting him in doing so and that was the only thing that needed to be completed prior to the sale of the Property" and she stated that she "spoke with Michael Reinhold, the Purchaser, and he also confirmed same." O'Briant does not state when she spoke with Reinhold, but it can be reasonably inferred that she did so after she was retained in March 2015. What cannot be inferred is that when she spoke with Reinhold he confirmed that Reinhold Investment Holdings, LLC remained willing to purchase the property for $900,000. Given that the purchase agreement was dated August 19, 2014 and contained a time-is-of-the-essence clause, Reinhold Investment Holdings, LLC was not obligated to honor the terms of the purchase agreement.[8] Therefore, on this record, it is not reasonable to infer that, but for Kallman's unspecified negligence in connection with the re-inspection issue, the property would have been sold for $900,000.

The trial court did not err by granting summary disposition.

### III. SANCTIONS

On appeal, Kallman argues that Taylor and O'Briant should be sanctioned, have costs imposed, and be ordered to pay reasonable attorney fees based on their decision to file a frivolous lawsuit and appeal. Kallman made essentially the same request in the trial court, and the court denied his motion. Kallman did not file a cross-appeal of the court's decision denying attorney fees. "[A]n appellee that has not sought to cross appeal cannot obtain a decision more favorable than was rendered by the lower tribunal." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 518; 892 NW2d 467 (2016) (quotation marks and citation omitted). Therefore, because Kallman did not file a cross-appeal, he may not properly seek what is, effectively, a reversal of the trial court's order denying his request for sanctions and attorney fees.

Affirmed. Kallman and Kallman Legal Group, LLC, may tax costs. MCR 7.219(A).

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[8] On appeal, Taylor contends that the trial court erred by failing to consider that the property could have been sold for $900,000 if the red-tags were removed, which would have allowed Taylor to satisfy First Merit Bank's monetary judgment notwithstanding that the sale would not have cured the default. Yet, even if the court failed to appreciate this nuance of Taylor's argument, reversal is not warranted because Taylor failed to demonstrate that a fact question exists on all the elements of his legal malpractice claim.